UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THE CORNERSTONE ASSOCIATION, D/B/A CORNERSTONE CONDOMINIUM ASSOCIATION,** Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-2478** |
| **INDEPENDENT SPECIALTY INSURANCE COMPANY,** Defendant | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court is a Motion to Compel Arbitration and to Stay, or, Alternatively, Dismiss These Proceedings filed by Defendant Independent Specialty Insurance Company ("ISIC").[1] Plaintiff, the Cornerstone Association D/B/A Cornerstone Condominium Association ("Cornerstone") filed an opposition.[2] Defendant replied.[3] For the reasons that follow, the motion is **GRANTED**, arbitration is **COMPELLED**, and this matter is **STAYED** pending the outcome of arbitration.

## BACKGROUND

This case arose out of an insurance coverage dispute between Plaintiff and Defendant following Hurricane Ida, which hit Louisiana on August 29, 2021.[4] Plaintiff sued Defendant in this Court on July 12, 2023, alleging breach of contract and bad faith.[5] At all times relevant to this litigation, Defendant provided Plaintiff with a surplus lines insurance policy ("the Policy"), which covered Plaintiff's property located at 936 Conti

---

[1] R. Doc. 21.
[2] R. Doc. 23.
[3] R. Doc. 26.
[4] *See* R. Doc. 1. at 3.
[5] R. Doc. 1. at 3–7.

1

Street, New Orleans, Louisiana ("the Property") against loss and damage caused by the elements.[6] The Policy was in full force and effect at the time of the covered loss events that are the subject of the instant lawsuit.[7] The Policy contains an arbitration clause, which reads, in relevant part:

> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.[8]

Defendant claims that, while the Policy provides coverage for the Property, the losses sustained because of Hurricane Ida were less than the deductibles of $33,750 and $52,680.[9] Plaintiff alleges it engaged an independent inspector who estimated the costs to repair the two buildings on the Property totaled $578,064.68 for Building 1 and $933,687.85 for Building 2.[10] Plaintiff alleges breach of contract and bad faith pursuant to La. R.S. 22:1892 and 22:1973.[11]

On October 5, 2023, Defendant filed the instant motion to compel arbitration and stay the proceedings.[12]

## **LEGAL STANDARD**

"Arbitration is a substitute for litigation whose purpose is to settle the parties' differences in a fast, inexpensive manner and in a tribunal chosen by them."[13] "When a party to a lawsuit claims that the matter is subject to arbitration, it must be determined

---

[6] R. Doc. 21-1 at 2; R. Doc. 23 at 2.
[7] R. Doc. 21-1 at 2; R. Doc. 23 at 2.
[8] R. Doc. 21-1 at 3.
[9] R. Doc. 21-1 at 2.
[10] R. Doc. 1 at 4.
[11] *Id.* at 5-6.
[12] R. Doc. 21.
[13] *Hanlon v. Monsanto Ag Prod., LLC*, 124 So. 3d 535, 539 (La. Ct. App. 2 Cir. 10/9/13) (citing *Tubbs Rice Dryers, Inc. v. Martin*, 33 So.3d 926 (La. Ct. App. 2 Cir. 2010)).

whether there is a valid agreement to arbitrate between the parties and whether the dispute falls within the scope of the arbitration agreement."[14]

"As a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[15] Under Louisiana law, arbitration agreements in insurance policies covering property within the state generally are prohibited.[16] Louisiana Revised Statute 22:868 provides in part:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
>
>> (1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
>>
>> (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> ....
>
> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.[17]

The policy forms of surplus line insurers are not subject to approval by the Department of Insurance.[18]

"While the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., codifies the national policy favoring arbitration and generally preempts state laws which 'contradict the purpose of the FAA by requir[ing] a judicial forum for the resolution of claims which

---

[14] *Id.*
[15] *Iberia Credit Burea, Inc. v. Cingular Wireless LLC,* 379 F.3d 159, 166 (5th Cir. 2004).
[16] LA. REV. STAT. § 22:868(A)(2).
[17] LA. REV. STAT. § 22:868.
[18] LA. REV. STAT. § 22:446(a).

3

the contracting parties agreed to resolve by arbitration,' under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law."[19] Thus, pursuant to the McCarran-Ferguson Act,[20] La. R.S. 22:868 is not preempted by the FAA.[21]

## LAW AND ANALYSIS

Defendant and Plaintiff agree that La. R.S. 22:868 controls the enforceability of the arbitration clause in the Policy.[22] The parties disagree, however, about whether La. R.S. 22:868(D) exempts surplus lines insurers from the statute's general prohibition of mandatory arbitration provisions.[23]

Plaintiff argues La. R.S. 22:868(A)(2) precludes the enforcement of mandatory arbitration clauses because arbitration is a "prohibited deprivation of jurisdiction of action."[24] Plaintiff contends La R.S. 22:868(D) ("Section D"), which grants an exception to the statute's prohibition on ""forum or venue selection clause[s]"[25] to surplus lines insurers, "solely dealt with validity of forum selection clauses and has nothing to do with arbitration."[26]

Defendant counters that Section D is applicable, because there is "no support for differentiating the choice of arbitral forums from other forums based on jurisdiction."[27] Defendant argues "[t]he arbitration provision does not divest this Court of jurisdiction,"[28]

---

[19] *Bourgeois v. Indep. Specialty Ins. Co.*, No. CV 22-1256, 2023 WL 6644171 at *1 (E.D. La. Oct. 12, 2023). (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n. 7 (5th Cir. 2004)).
[20] 15 U.S.C. §§ 1011, 1012.
[21] *See, e.g., Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006).
[22] R. Doc. 21-1 at 7-8; R. Doc. 23 at 4-7.
[23] R. Doc. 21-1 at 7-8; R. Doc. 23 at 5-7.
[24] R. Doc. 23 at 7.
[25] LA. REV. STAT. § 22:868(D).
[26] *Id*.
[27] R. Doc. 26 at 4.
[28] *Id*. at 6.

4

but rather, functions as a kind of forum-selection clause, mandating transfer to the arbitral forum.[29] Defendant additionally asserts the legislative history of Section D indicates an intent to grant greater flexibility to surplus lines insurers to control the terms of their policies by including an arbitration clause.[30]

"When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court."[31] As Judge Lemelle has recently noted,[32] the question of the applicability of Section D to arbitration clauses has not yet been decided by the Louisiana Supreme Court, so this Court "must make an 'Erie guess' and 'determine as best it can' what the Louisiana Supreme Court would decide."[33]

Plaintiff cites a concurring opinion from the Louisiana Supreme Court in *Creekstone Juban I, L.L.C. v. XL Ins. Am., Inc.*, to support its distinction between arbitration clauses and forum selection clauses,[34] but the majority opinion in *Creekstone* did not address "§ 22:868 in terms of arbitration clauses and did not hold that arbitration clauses pertained to jurisdiction or forum/venue."[35] Instead, "the Supreme Court of Louisiana has quoted with approval the United States Fifth Circuit Court of Appeals' classification of a mandatory arbitration clause as a species of forum-selection clause."[36] Moreover, after *Creekstone* was decided, the Louisiana Supreme Court reiterated the principal that

---

[29] *Id.* at 4-6.
[30] *Id.* at 7-8.
[31] *Barfield v. Madison Cnty., Miss.,* 212 F.3d 269, 271-2 (5th Cir. 2000).
[32] *Ramsey v. Indep. Specialty Ins. Co.*, No. CV 23-0632, 2023 WL 5034646 at *3 (E.D. La. Aug. 8, 2023).
[33] *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir.1999)).
[34] R. Doc. 23 at 5-6 (quoting *Creekstone*, 2018-0748 (La. 5/8/19), 282 So. 3d 1042 (Weimer, J., concurring)).
[35] *Ramsey* 2023 WL 5034646 at *5 (citing *Creekstone,* 282 So. 3d at 1052-53).
[36] *Bourgeois*, 2023 WL 6644171 at *2; *see Hodges v. Reasonover*, 103 So. 3d 1069, 1076 (La. 2012) (citing *Ginter ex el. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 443 (5th Cir. 2008)).

5

an arbitration clause is a species of forum selection clause in *Donelon v. Shilling*, saying "[a]n arbitration clause has been characterized by this court as a type of venue selection clause."[37] Since the most recent Louisiana Supreme Court authority on the issue indicates arbitration clauses are a type of venue selection clause, this Court will accept that interpretation.[38]

Plaintiff's contention that the arbitration clause would divest the court of jurisdiction, in violation of La. R.S. 22:868(A)(2), lacks merit. "The federal courts of appeals have consistently found that district courts intend to retain jurisdiction when they stay proceedings pending arbitration."[39] The United States Supreme Court has enforced an arbitration clause noting that the view that irrevocable arbitration clauses 'ousted' courts of jurisdiction has been abandoned following enactment of the FAA."[40] Further, the Fifth Circuit has held that "agreements to arbitrate implicate forum selection and claims-processing rules, not subject matter jurisdiction."[41]

---

[37] 340 So. 3d 786, 791 n. 6 (La. 4/27/20).
[38] See *Donelen*, 340 So. 3d at 791 n. 6; *Ramsey* 2023 WL 5034646 at *5. Some courts have recently found arbitration clauses deprive the court of jurisdiction. (*See Bufkin Enterprises, LLC v. Indian Harbos Ins. Co.* (No. 2:21-CV-04017, 2023 WL 2393700 (W.D. La. Mar. 7, 2023)); *Fairway Vill. Condominiums v. Indep. Specialty Ins. Co.* (No. CV 22-2022, 2023 WL 2866944 (E.D. La. Apr. 10, 2023))). Both *Bufkin* and *Fairway* rely on the concurrence in *Creekstone* to find Section D should not exempt surplus lines insurers from the prohibition on arbitration clauses. (*Fairway*, 2023 WL 2866944 at *5 (citing *Bufkin*, 2023 WL 2393700 at *6-7, which relies on Justice Weimer's concurrence in *Creekstone*)). However, other sections of this court have recently found arbitration clauses do not deprive the court of jurisdiction and are therefore not prohibited in surplus lines policies. (*See Bourgeois v. Indep. Specialty Ins. Co.* (2023 WL 6644171 at *2); *Ramsey* (2023 WL 5034646 at *5)).
[39] *Am.Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 715 n.5 (5th Cir. 2002) (citing *Corion Corp. v. Chen*, 964 F.2d 55, 56–57 (1st Cir.1992); *Jolley v. Paine Webber Jackson & Curtis, Inc.,* 864 F.2d 402, 405 (5th Cir.1989)).
[40] *Bourgeois*, 2023 WL 6644171 at *2 (citing *Scherk*, 417 U.S. at 510 n. 4; *see also, M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("the argument that such clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction")).
[41] *Ruiz v. Donahoe*, 784 F.3d 247, 249–50 (5th Cir. 2015).

6

Finally, in a recent opinion, Judge Lemmon examined the legislative history of La. R.S. 22:868 and concluded the Louisiana Legislature intended to preserve flexibility for surplus lines insurers and to exempt them from the prohibition in Section A:

> Finally, the court notes that the legislative history of La. R.S. § 22:868 reflects an intent to preserve flexibility for surplus lines insurers. The 2020 amendments originated with a bill by Senator Luneau to amend 22:868 to change the title as follows: '§868. Limiting actions; jurisdiction**; venue**' and paragraph A(2) to provide: 'Depriving the courts of this state of the jurisdiction **or venue** of action against the insurer." (Underscore and boldface represent proposed additions.) At the committee hearing on the bill, senators questioned Senator Luneau on whether the proposed amendment would undermine the holding in *Creekstone Juban* recognizing the validity of forum selection clauses in insurance contracts. Senator Luneau professed to be unfamiliar with *Creekstone Juban*, but emphasized repeatedly that the sole goal of the proposed amendment was to prevent rural or far-flung constituents, in cases involving suits brought in Louisiana courts on a Louisiana insurance policy, from being forced to litigate in relatively distant urban centers (e.g., New Orleans and Baton Rouge), due to its costliness. Following a discussion in which some senators expressed a reluctance to endorse a blanket rule that could be interpreted as contrary to Creekstone Juban, specifically noting that the flexibility to choose a forum provided a basis for negotiation on price, the bill, as proposed by Senator Luneau, did not pass. Four days later, on May 19, 2020, Senator Peacock introduced an amendment to add Section D in its present form, exempting surplus lines insurers from the prohibition on forum selection clauses.
>  This sequence of events demonstrates a legislative intent to guarantee that surplus lines insurers were exempt from the prohibitions codified in Section A. It also comports with the holding in Creekstone Juban that the statutory prohibition against insurance policy provisions depriving Louisiana state courts of jurisdiction over the actions against insurers did not invalidate forum selection clauses, because they do not "oust the jurisdiction" of the state court.[42]

Accordingly, the Court finds Section D applies to arbitration clauses, allowing enforcement of such clauses in surplus lines policies. As Defendant is a surplus lines insurer,[43] the arbitration clause at issue in the Policy is enforceable.

---

[42] *Bourgeois*, 2023 WL 6644171 at *4 (internal citations omitted).
[43] R. Doc. 21-1 at 2; R. Doc. 23 at 2.

Finally, Defendant asks the Court to stay the action pending arbitration or in the alternative, dismiss the suit.[44] Pursuant to the FAA, when referred to arbitration, the court in which the suit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[45] Accordingly, Defendants' request for a stay is granted.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and Stay Pending Arbitration[46] is **GRANTED**.

The Clerk of Court shall **STAY AND ADMINISTRATIVELY CLOSE** this case, to be reopened, if necessary and upon written motion by a party, after arbitration is completed.

**New Orleans, Louisiana, this 29th day of November, 2023.**

                                         *Susie Morgan*
                                         **SUSIE MORGAN**
                              **UNITED STATES DISTRICT JUDGE**

---

[44] R. Doc. 21-1 at 9.
[45] 9 U.S.C. § 3.
[46] R. Doc. 21.